IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Anthony C. Barrett,                    :

              Plaintiff,          :     Case No.  2:14-cv-0216

    v.                                 :     JUDGE PETER C. ECONOMUS

Algenon L. Marbley, et al.,            :     Magistrate Judge Kemp

             Defendants.         :

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, Anthony C. Barrett, a federal prisoner, filed this action claiming that the defendants violated his civil and constitutional rights in connection with a prior criminal trial held in this Court.  The case is before the Court for a screening which is required whenever a prisoner files suit against a governmental entity or officer or employee of a governmental entity.  For the following reasons, it will be recommended that Mr. Barrett's case be dismissed.

I.

28 U.S.C. §1915(e)(2) provides that in proceedings <u>in forma pauperis</u>, "[t]he court shall dismiss the case if ... (B) the action ... is frivolous or malicious [or] fails to state a claim on which relief can be granted...."  28 U.S.C. §1915A further provides that in any prisoner case, the Court shall dismiss the complaint or any portion of it if, upon an initial screening, it appears that the complaint fails to state a claim upon which relief can be granted or seeks monetary damages from a defendant who is immune from suit.

The purpose of these statutory sections is to prevent suits which are a waste of judicial resources and which a paying litigant would not initiate because of the costs involved.  <u>See</u>

Neitzke v. Williams, 490 U.S. 319 (1989). A complaint may be
dismissed as frivolous only when the plaintiff fails to present a
claim with an arguable or rational basis in law or fact. See id.
at 325. Claims which lack such a basis include those for which
the defendants are clearly entitled to immunity and claims of
infringement of a legal interest which does not exist, see id. at
327-28, and "claims describing fantastic or delusional scenarios,
claims with which federal district judges are all too familiar."
Id. at 328; see also Denton v. Hernandez, 504 U.S. 25 (1992). A
complaint may not be dismissed for failure to state a claim upon
which relief can be granted if the complaint contains "enough
facts to state a claim to relief that is plausible on its face."
Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).
Claims against defendants who are immune from suits for money
damages, such as judges or prosecutors acting in their judicial
or prosecutorial capacity, are also within the ambit of §1915A.
Pro se complaints are to be construed liberally in favor of the
pro se party. See Haines v. Kerner, 404 U.S. 519 (1972). Mr.
Barrett's complaint will be reviewed under these legal standards.

II.

The records of this Court show that Mr. Barrett was charged,
by an indictment filed in Case No. 2:11-cv-173, with conspiracy
to commit armed bank robbery, armed bank robbery, carrying or
brandishing weapons in relation to those two charges, and
possession of a firearm and ammunition by a three-time convicted
felon. Mr. Barrett was represented in the case by attorney J.
Kristin Burkett, who was appointed by the Court pursuant to the
Criminal Justice Act, 18 U.S.C. §3006A, and the United States was
represented by Assistant United States Attorney Salvador A.
Dominguez. On August 19, 2011, Mr. Barrett entered a guilty plea
before District Judge Algenon L. Marbley to counts two and four
of the indictment. He was subsequently sentenced to 228 months

of imprisonment and five years of supervised release.  He did not
appeal, but did file a motion to vacate under 28 U.S.C. §2255,
which was denied on January 14, 2014.  That matter is currently
on appeal.

In the complaint filed in this case, Mr. Barrett again asks
for his sentence to be vacated, but he also requests one billion
dollars in compensatory damages.  The Court will summarize
briefly the claims which he asserts against Judge Marbley, Mr.
Dominguez, Ms. Burkett, and Adrienne Larimer, an attorney who
works with Ms. Burkett.

Mr. Barrett admits signing a plea agreement, but contends
that he did so based on "bad advice."  He claims that he was told
by his attorney how to answer Judge Marbley's questions when he
pleaded guilty, and that at the sentencing hearing on December 7,
2011 he was taking "psycotic (sic) medication" and was not
competent to be sentenced, although Ms. Burkett said that he was.
He argues that Mr. Dominguez, Ms. Burkett, and Ms. Larimer
committed "moral wrongs" against him through misapplication of
"law statute, rules, codes."

Explaining what he means by "moral wrongs," Mr. Barrett's
complaint states that Mr. Dominguez and Ms. Burkett conspired
together by committing fraud and that his imprisonment is based
upon fraud.  He claims Mr. Dominguez did not give him "full
disclosure" and that he is now aware that "per the removal of
lawful constitutional money of exchange, one cannot pay their
debts at law."  Additionally, he contends that he was
fraudulently induced into making an agreement and subjecting
himself to the authority of the Court despite the fact that "the
United States of America Courts are not in compliance to their
own Constitution" and he is "not a part to their Constitution, in
the first place."

Mr. Barrett pleads that Ms. Burkett was, from the outset,

-3-

an agent of the United States and that she was laboring under a conflict of interest. What she should have done, says Mr. Barrett, was to "cause settlement and adjustment of this commercial matter via the exemption of the client me myself" and when she realized she could not, she should have withdrawn. He also claims she committed perjury by filing a false affidavit in connection with his §2255 motion, and that Ms. Larimer did the same.

The question before the Court is whether any of these allegations are sufficient to state a claim upon which relief can be granted, or whether they involve claims for money damages against officials who are immune from suit. The Court will analyze that question on a defendant-by-defendant basis.

III.

A. Judge Algenon L. Marbley

Mr. Barrett does not identify with any specificity the legal theory under which he has brought his claims. The Court assumes that, at least as it relates to Judge Marbley, Mr. Barrett is asserting claims arising directly under the United States Constitution, and also tort claims (such as fraud or misrepresentation) arising under state law. The Court would have jurisdiction over any federal constitutional claims pursuant to 28 U.S.C. §1331, the general federal question jurisdictional statute. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The associated tort claims would fall under the supplemental jurisdiction provided for in 28 U.S.C. §1367.

Although Mr. Barrett's complaint does not contain many facts concerning what Judge Marbley either did or failed to do, one thing is clear: all of the acts or omissions about which Mr. Barrett complains relate to his prior criminal case, and to the way in which Judge Marbley handled that case. But a judge is

-4-

absolutely immune from suit if the reason a plaintiff wishes to hold the judge liable stems from the judge's actions in a civil or criminal trial over which the judge presided.  That has been the law in this country since its inception, and it bars all of Mr. Barrett's claims for damages against Judge Marbley.

The Supreme Court of the United States engaged in extensive discussion of the doctrine of "judicial immunity" in the 1871 case of <u>Bradley v. Fisher</u>, 80 U.S. 335 (1871).  That case arose out of a trial held in Criminal Court of the District of Columbia in which one John H. Suratt was  tried for the murder of President Abraham Lincoln.  (Mr. Suratt was admittedly a member of a group, including John Wilkes Booth, which had planned to kidnap President Lincoln in 1864; Suratt denied any knowledge of an assassination plot, and the jury in his murder trial was unable to reach a verdict).  During the trial, Judge Fisher, the presiding judge, was allegedly accosted and insulted by one of Suratt's attorneys, Joseph H. Bradley; Judge Fisher subsequently issued an order striking Mr. Bradley's name from the roll of attorneys authorized to practice in the District of Columbia courts.  Mr. Bradley then sued Judge Fisher for money damages.

The Supreme Court, as it typically did in such cases, looked to English law for an answer to the question of whether such a suit could be maintained.  The Court described what "has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country" this way:

> [I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no

judiciary can be either respectable or useful.

Bradley v. Fisher, supra, at 347. In fact, the Supreme Court said that this doctrine "obtains in all countries where there is any well-ordered system of jurisprudence." Id. The Court then formulated what is still, today, the appropriate legal test for this situation: "judges of courts of ... general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Id. at 351. The only time a judge can be liable for a judicial act is if there was "the clear absence of all jurisdiction over the subject-matter." Id.

In the ensuing years, the Supreme Court (as well as other federal and state courts) has been faced with numerous cases testing the limits of this principle. Some of them are hard cases on the facts; for example, the judge who claimed immunity in Stump v. Sparkman, 435 U.S. 349 (1978) had ordered the sterilization of a fifteen-year-old girl, without holding a hearing or appointing a guardian ad litem, based on her mother's claim that the girl was "somewhat retarded." The girl was not even informed of the nature of the operation, and did not learn that she had been sterilized until she married and was unable to get pregnant. Nevertheless, the Supreme Court held that because the judge sat on a state court which had general jurisdiction, and because that jurisdiction arguably covered cases where sterilization was requested, the judge had not acted in "the clear absence of all jurisdiction" and that he was immune from suit.

This case, by comparison, is not difficult. United States District Judges, by statute, have jurisdiction to hear cases brought under the criminal statutes of the United States. 18

-6-

U.S.C. §3231 states: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Whatever acts Judge Marbley performed in that case clearly fell within the scope of that jurisdiction.

Further, Mr. Barrett has not identified any "non-judicial" act for which he seeks to hold Judge Marbley liable.  As the Court of Appeals explained in Ireland v. Tunis, 113 F.3d 1435, 1441 (6th Cir. 1997), two factors, both set out in Stump v. Sparkman, supra, determine whether a judge's act is a judicial one.  First, the courts look to see if the act in question is one which a judge normally performs.  Second, they look to see if "the parties dealt with the judge in his or her judicial capacity."  Mr. Barrett has not pointed to any act done by Judge Marbley which would be something not usually performed by a judge.  Judge Marbley conducted an arraignment, took a guilty plea, and imposed sentence.  "Conducting hearings, taking guilty pleas, and imposing criminal sentences are functions that a judge typically performs." Henderson v. Alabama, 2008 WL 4265049, *5 (S.D. Ala. Sept. 12, 2008).  And Mr. Barrett has not claimed that he dealt with Judge Marbley anywhere but in the courtroom, or in any situation where Judge Marbley was not acting as the judge in Mr. Barrett's case.  Consequently, Judge Marbley is absolutely immune from Mr. Barrett's claims for money damages.  That applies not only to the constitutional or civil rights claims in the complaint, but to any tort claims for fraud or misrepresentation. See Mikkilineni v. Com. of Pennsylvania, 2003 WL 21854754, *5 (D.D.C. Aug. 5, 2003)("[b]ecause the alleged tortious acts are judicial acts, the judicial immunity defense applies ...").

     B.  Assistant United States Attorney Dominguez

Mr. Barrett's claims against AUSA Dominguez are slightly more detailed.  He accuses Mr. Dominguez of withholding

-7-

information from him – apparently information about the nature of
the United States court system – and fraudulently inducing him
into entering into a plea agreement.  Those claims, too, are
barred by an absolute immunity: the "absolute immunity for
conduct of prosecutors that [is] 'intimately associated with the
judicial phase of the criminal process.'"  Buckley v.
Fitzsimmons, 509 U.S. 259, 270 (1993), quoting Imbler v.
Pachtman, 424 U.S. 409, 430 (1976).

     Like judges, prosecutors were immune at common law from
suits challenging their conduct as prosecutors.  In Imbler, the
Supreme Court considered whether that immunity should also apply
to claims that a prosecutor violated the civil or constitutional
rights of a criminal defendant.  In holding that a prosecutor
should not be forced to defend himself or herself in a subsequent
civil action brought by a dissatisfied litigant, the Supreme
Court quoted with approval this language from Pearson v. Reed,
6 Cal.App.2d 277, 287, 44 P.2d 592, 597 (1935):

> The office of public prosecutor is one which must be
> administered with courage and independence.  Yet how
> can this be if the prosecutor is made subject to suit
> by those whom he accuses and fails to convict?  To
> allow this would open the way for unlimited harassment
> and embarrassment of the most conscientious officials
> by those who would profit thereby.

Imbler, 424 U.S. at 423.  The Supreme Court observed "that
harassment by unfounded litigation would cause a deflection of
the prosecutor's energies from his public duties, and the
possibility that he would shade his decisions instead of
exercising the independence of judgment required by his public
trust."  Id.  For those reasons, so long as a prosecutor is
functioning as a prosecutor, and not in some other capacity,
absolute immunity applies to his or her actions.

     Here, the only actions which Mr. Dominguez supposedly
carried out were those associated with his role as the

-8-

prosecuting attorney.  As the Court of Appeals has said, "[c]onduct associated with plea bargains has long been held by this court to be 'so intimately associated with the prosecutor's role as an advocate of the State in the judicial process' as to warrant absolute immunity." Cady v. Arenac County, 574 F.3d 334, 341 (6th Cir. 2009), quoting Cole v. Smith, 1999 WL 685940, at *2 (6th Cir. Aug. 24, 1999).  Again, Mr. Barrett's complaint describes no actions taken by Mr. Dominguez outside the scope of his role as a prosecutor; there is no allegation, for example, that he conducted an unlawful search, applied unwarranted physical force, or engaged in some other non-prosecutorial action that would deprive him of immunity. Cf. Rouse v. Stacy, 478 Fed. Appx. 945 (6th Cir. April 17, 2012) (prosecutor not immune from suit alleging that he directed the defendant to be attacked in his jail cell in order to persuade him to plead guilty). Consequently, all of the claims against Mr. Dominguez are barred by absolute prosecutorial immunity.

C.  <u>Ms. Burkett and Ms. Larimer</u>

The claims which Mr. Barrett makes against his attorney, Ms. Burkett, and her associate, Ms. Larimer, fall into two different categories.  He faults Ms. Burkett for the way she represented him during the course of his criminal case, and he says that both of them violated his rights by signing false affidavits in connection with his §2255 case.

Taking the latter claim first, the law provides absolute immunity from suit not only for judges and prosecutors when they are carrying out their assigned roles in the justice system, but also to witnesses who provide evidence in civil and criminal cases.  The immunity does not depend on whether the testimony was truthful, but whether it was given during the course of a trial proceeding.  So, for example, in Briscoe v. LaHue, 460 U.S. 325 (1983), the Supreme Court considered whether a police officer

-9-

could be sued by a defendant against whom the officer had given perjured testimony (in that case, by allegedly falsely stating that the defendants had gotten together to harmonize their stories before they spoke with the police).  Witness immunity, the Supreme Court held, was also "well established in English common law" and was based on the fact that the threat of liability might prevent witnesses from testifying at all, or might cause them to distort their testimony based on a fear that they might later be held liable.  Id. at 332-33.  Either of these occurrences might "deprive the finder of fact of candid, objective, and undistorted evidence."  Id. at 333.  Courts recognize that false testimony does not serve the interests of justice, but they also see the need to balance that evil against the problems which would ensue if witnesses could be sued by any party dissatisfied with the content of their testimony.  The line has been drawn in favor of absolute immunity from suits for money damages, so that witnesses who testify falsely can be prosecuted for perjury, but they cannot be held civilly liable based solely upon their testimony.

The Court of Appeals has made clear that this immunity applies to witnesses who sign an affidavit as well as those who present live testimony in the courtroom; that is, "testimony presented in the form of an affidavit may be protected under absolute witness immunity."  Todd v. Weltman, Weinberg & Reis Co., L.P.A., 434 F.3d 432, 439 (6th Cir. 2006).  That case carved out an exception for an affidavit filed in support of a request for a writ of garnishment, finding that the affiant in that situation was a "complaining witness" and not a witness in the true sense of the word because the affidavit was being used to instigate proceedings and not at a later adversarial stage of the case.  By contrast, this Court has held that affidavits submitted on the merits of a case, such as an affidavit filed in support of

a dispositive motion, constitute the type of testimony for which
absolute immunity is available.  Slayton v. Wells Fargo Bank, NA,
2013 WL 819229 (S.D. Ohio March 5, 2013), aff'd 542 Fed. Appx.
512 (6th Cir. Nov. 21, 2013).  The same concept has been applied
in criminal cases, even to proceedings not directly related to
guilt or innocence.  See, e.g., Burns v. County of King, 883 F.2d
819 (9th Cir. 1989)(extending absolute immunity to witness who
signed affidavit used in bail revocation proceedings).  It is
clear under these principles that neither Ms. Burkett nor Ms.
Larimer may be subjected to civil liability for the statements
made in their affidavits which were submitted to the Court as
part of the §2255 proceedings.

The remaining claims are those asserted against Ms. Burkett
for her performance as Mr. Barrett's defense attorney.  It
appears there are two separate bases for these claims: the first
is a constitutional or civil rights claim based on allegations
that Ms. Burkett conspired with Mr. Dominguez to violate Mr.
Barrett's rights, and the second is a malpractice claim based
primarily on an alleged conflict of interest.

The most significant problem with Mr. Barrett's malpractice
claim is that it was filed too late.  Under Ohio law, the statute
of limitations for claims based on legal malpractice is one year.
Ohio Rev. Code §2305.11(A).  The Ohio Supreme Court has held that
under that statute, "an action for legal malpractice accrues and
the statute of limitations begins to run when there is a
cognizable event whereby the client discovers or should have
discovered that his injury was related to his attorney's act or
non-act and the client is put on notice of a need to pursue his
possible remedies against the attorney or when the
attorney-client relationship for that particular transaction or
undertaking terminates, whichever occurs later." Zimmie v.
Calfee, Halter & Griswold, 43 Ohio St.3d 54 (1989)(syllabus).

-11-

Here, Ms. Burkett's representation of Mr. Barrett ended sometime in late 2011 or early 2012. Her last appearance on his behalf was at the sentencing hearing, which took place on December 7, 2011, and her application for final payment was approved in January, 2012. The last order that the Court issued in this case, prior to the proceedings relating to the §2255 motion (which Mr. Barrett filed *pro se*) was the final order of forfeiture dated March 8, 2012. This case was filed well over one year after all of these things happened, and Mr. Barrett has not pointed to any "cognizable event" which occurred within one year of February 19, 2014 - the date he signed his complaint in this case - which led him to realize, for the first time, that Ms. Burkett may not have represented him properly. In fact, he alleged ineffective assistance of counsel in his §2255 petition which he signed on November 15, 2012. Even if he was unaware of Ms. Burkett's claimed malpractice before that date, he asserted in his petition that his guilty plea was induced by "bad advice" on her part and that he was under the influence of psychotic medication, which is the essence of his claim here. Further, he has always known that Ms. Burkett was appointed by the Court to represent him and that he was not paying her fee; to the extent his conflict of interest claim rests on his belief that by accepting payment from the Court, Ms. Burkett became an agent of the government, that claim also accrued more than one year before he filed this case. All of his malpractice claims are subject to dismissal for that reason. See Castillo v. Grogan, 52 Fed. Appx. 750, 751 (6th Cir. Dec. 11, 2002)("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate").

That leaves only Mr. Barrett's claims against Ms. Burkett for the violation of his constitutional and civil rights. He has

-12-

no claim against her directly for such violations; claims brought under the Constitution, or for other violations of federal law, over which the Court has jurisdiction by virtue of 28 U.S.C. §1331 as interpreted in <u>Bivens, supra</u>, cannot be maintained against private actors.  Rather, "[a] <u>Bivens</u> action is a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors." <u>Yeager v. General Motors Corp.</u>, 265 F.3d 389, 398 (6th Cir. 2001).  A criminal defense attorney is not a federal actor or agent simply because that attorney is appointed by the Court and paid with federal funds. <u>See Murphy v. Bloom</u>, 443 Fed. Appx. 668, 670 (3d Cir. Aug. 31, 2011)(appointed counsel, "even though paid by the government, did not act under color of federal law for purposes of <u>Bivens</u> where he was performing traditional functions of counsel"), <u>citing Polk Co. v. Dodson</u>, 454 U.S. 312 (1981).  In <u>Dodson</u>, the Supreme Court had held that a state public defender did not function as a state actor for purposes of 42 U.S.C. §1983 just because he received payment from the state, and that he could not be sued under that statute for allegedly violating his client's civil or constitutional rights.  Consequently, Ms. Burkett was not a "federal actor" when she represented Mr. Barrett, and he cannot sue her directly under federal law for alleged violations of his civil or constitutional rights.

The complaint, construed liberally, also appears to allege that Ms. Burkett and Mr. Dominguez – who, as an Assistant United States Attorney, is a federal actor – conspired to violate Mr. Barrett's rights.  That is a theory which, if supported by plausible factual allegations, could allow a private attorney to be held liable for constitutional violations. <u>See, e.g., Vector Research v. Howard & Howard Attorneys, P.C.</u>, 76 F.3d 692, 698 (6th Cir. 1996)(private attorneys could be held liable on a <u>Bivens</u> claim if they "acted in concert" with federal officials to

-13-

violate the plaintiff's constitutional rights).

Here, however, there are no plausible factual allegations to support Mr. Barrett's claim of a conspiracy. In order to plead a conspiracy to deprive someone of civil or constitutional rights, a complaint must describe the facts about the conspiracy in a fairly specific way. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim...." <u>Gutierrez v. Lynch</u>, 826 F.2d 1534, 1538 (6th Cir. 1987). The sum total of Mr. Barrett's allegations concerning a conspiracy are that "[Ms.] Burkett committed ... conspiracy," Complaint, at 5, that "Salvador A. Dominguez conspired with J. Kristin Burkett in fraud, fraudulent misrepresentation, conspiracy, unlawful incarceration based on fraud," Complaint, at 10, and that "[t]he fact is Ms. Burkett conspired with Salvador A. Dominguez and the United States of America." Complaint, at 14.

These are not factual allegations at all, but simply legal conclusions. This Court has previously held that conclusory allegations, such as pleading that "Defendants conspired together to intentionally deprive Plaintiffs of their civil rights" and "Defendants ... conspired together to violate Plaintiffs' constitutionally protect civil and property rights" were too vague, and too lacking in factual content, to survive a motion to dismiss. <u>See Stebelton v. Bloom Tp. Bd. of Zoning Appeals</u>, 2010 WL 1629868, *5 (S.D. Ohio Apr. 21, 2010). "[T]he bare allegation that Defendants acted in concert to violate Plaintiff's constitutional rights does not suffice to give rise to a cognizable conspiracy claim ...." <u>Gonzales v. Price</u>, 2009 WL 4718850, *7 (E.D. Cal. Dec. 2, 2009). Mr. Barrett has provided nothing more; the complaint pleads no facts about how or when Mr. Dominguez and Ms. Burkett met, what their common plan was, or

-14-

what steps each of them took to carry out an alleged conspiracy
to deprive Mr. Barrett of his rights.  It is inherently
implausible that a prosecutor and a defense attorney, who each
have ethical obligations to their respective clients which
require them to act in the client's best interest, would
nonetheless agree to subvert the interests of one of their
clients to the other.  Claiming they did so because the criminal
defendant is unhappy with the results of his case is something
that could be alleged in any criminal prosecution; without at
least some facts to back up such a claim, and to allow the Court
to determine that it is at least "plausible," such a claim may
not go forward.  As this Court said in McCoy v. Stokes, 2012 WL
5289518, *2 (S.D. Ohio Oct. 25, 2012):

> permitting a ... conspiracy claim to proceed on this
> type of allegation would create the potential for every
> agreement or decision made by a defense attorney during
> the course of a criminal trial into a federal
> constitutional claim for damages. Any convicted
> defendant could allege, without additional support,
> that the reason his attorney did or failed to do some
> particular thing during the course of trial was that
> the attorney and the prosecutor had reached an
> agreement as to that course of action — which
> frequently occurs in a criminal case — and that the
> agreement was, in fact, a conspiracy between a state
> actor (the prosecuting attorney) and defense counsel to
> deprive the defendant of his constitutional rights.
> Allowing such bald accusations to survive either an
> initial screening or a motion to dismiss would then
> place the burden of litigation on the defendant in a
> way that would appear to violate the spirit, if not the
> letter, of the Supreme Court's recent decision in
> Ashcroft v. Iqbal, 556 U.S. 662, 687, 129 S.Ct. 1937,
> 173 L.Ed.2d 868 (2009), where the Court stated that
> "Rule 8 does not empower respondent to plead the bare
> elements of his cause of action ... and expect his
> complaint to survive a motion to dismiss."

That describes exactly the situation created by Mr. Barrett's
complaint, and explains why he should not be allowed to proceed

on that claim.  It also eliminates the need to determine whether
he adequately identified which constitutional rights he was
allegedly deprived of and how the actions of either Ms. Burkett
or her alleged co-conspirator, Mr. Dominguez, deprived him of
such rights.

IV.

For all of the reasons set forth above, it is recommended
that this case be dismissed under 28 U.S.C. §§1915(e)(2) and
1915A.  Should this recommendation be adopted, the Clerk should
be directed to mail a copy of the complaint, this Report and
Recommendation, and any dismissal order to the defendants.

V.

Any party may, within fourteen days after this Order is
filed, file and serve on the opposing party a motion for
reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A),
Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01,
pt. IV(C)(3)(a).  The motion must specifically designate the
order or part in question and the basis for any objection.
Responses to objections are due fourteen days after objections
are filed and replies by the objecting party are due seven days
thereafter.  The District Judge, upon consideration of the
motion, shall set aside any part of this Order found to be
clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for
reconsideration has been filed unless it is stayed by either the
Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


                              /s/ Terence P. Kemp
                              United States Magistrate Judge




-16-